UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

United States of America,

v.

Stolt-Nielsen S.A., Stolt-Nielsen
Transportation Group Ltd. (Liberia),
Stolt-Nielsen Transportation Group Ltd.
(Bermuda), Samuel A. Cooperman, and
Richard B. Wingfield,

*Defendants.*

Criminal No. 06-CR-466

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
REFER CASE TO CHIEF JUDGE FOR THE PURPOSE OF REASSIGNMENT**

In opposing the motion to reassign this action to Judge Savage, the Antitrust Division
(i) misreads the applicable Local Rules; and (ii) understates the efficiency that would be gained
by the reassignment.  Defendants respectfully submit that the motion should be granted.

**I.      The Local Rules Authorize Reassignment By The Chief Judge**

The Division points out that Local Criminal Rule 50.1(d)(1) provides for the random
assignment of criminal cases.  Opp. at 3.  That proposition is not in question.  The question here
is whether the Local Rules authorize the Chief Judge to *re*assign criminal cases under certain
circumstances, such as those presented here.  A plain reading of the Local Rules indicates that
they do so authorize the Chief Judge.

Local Criminal Rule 1.2 states that certain enumerated Local Civil Rules "shall be fully applicable in all criminal proceedings."  One of the enumerated Local Civil Rules is Local Civil Rule 40.3.1, which empowers the Chief Judge to serve as Calendar Judge and gives him, among other things, "[t]he duties and responsibilities set forth in Rule 40.1 of these Rules."  Local Civil Rule 40.1, of course, expressly authorizes the Chief Judge to reassign a related case to a judge to whom the earlier related case was assigned.

The Chief Judge's duties and responsibilities under Local Civil Rule 40.1 thus are incorporated in the Local Criminal Rules through Local Criminal Rule 1.2.  The Chief Judge thereby is empowered to *re*assign this criminal case to Judge Savage, upon the reference of Judge Kauffman as the judge to whom the later related case was filed.  L. Civ. R. 40.1(c)(2).

The Division erroneously states that "defendants ignore Local Criminal Rule 1.2."  Opp. at 4.  In fact, Defendants expressly relied upon Local Criminal Rule 1.2 in both the opening sentence of their motion (page 1) and their supporting memorandum (page 8).

The Division also states that Local Criminal Rule 1.2 "omits Local Civil Rule 40.1 from its enumeration of local civil rules applicable in criminal proceedings."  Opp. at 4.  The Division thus conveniently obscures the plain fact that Local Criminal Rule 1.2 ***includes*** Local Civil Rule 40.3.1 in its enumeration, and that rule expressly vests in the Chief Judge "[t]he duties and responsibilities set forth in Rule 40.1 of these Rules."

Despite the incorporation of the Chief Judge's Local Civil Rule 40.1 powers into the Local Criminal Rules, the Division asserts flatly that "Civil Rule 40.1 does not apply in the criminal context."  Opp. at 4.  To support this faulty assertion, the Division misplaces reliance upon the published commentary of one private practitioner.  That commentary, of course, is not

2

binding upon this Court.   More fundamentally, the commentary does not in fact support the Division's assertion, because the commentary merely states that there is no provision in the local criminal rules that "parallels" the local civil rule on related cases.   Vaira, E.D. PA. FEDERAL PRACTICE RULES, Comment 1 on Local Criminal Rule 50.1.   The mere fact that there is no "parallel" related case rule in the Local Criminal Rules certainly does not suggest that the reassignment powers expressly vested in the Chief Judge are somehow negated. *See, e.g., United States v. Forbes*, 150 F. Supp. 2d 672, 680 (D. N.J. 2001) ("the absence of a provision [in the local criminal rules] *explicitly allowing* related case assignments does not necessarily imply that such assignments are *prohibited*.") (emphasis in original).

Indeed, the Vaira commentary and case law from this jurisdiction indicate precisely why there is no criminal rule paralleling the civil rule on related cases:  to curb potential abuse by litigants acting without judicial oversight.   The Vaira commentary states:   "A procedure which permitted the U.S. Attorney to relate indictments to a docketed grand jury matter previously assigned to a judge was discontinued because of the opportunity it provided for judge-shopping." Vaira, E.D. PA. FEDERAL PRACTICE RULES, Comment 1 on Local Criminal Rule 50.1.   (The Division quotes only the second half of this sentence (Opp. at 3), thus obscuring the fact that it was concern about *prosecutorial* judge-shopping that was being addressed.)   Likewise, in *United States v. Gerard*, Cr. No. 87-00177, 1987 WL 18400, at *2 (E.D. Pa. Oct. 7, 1987), Judge Bechtle explained that a related-case rule was rejected in the Local Criminal Rules "in order to prevent the temptation of judge-shopping or the manipulation of our random selection process to bring about a preferred assignment regarding certain individuals who are charged from time to

time with a variety of crimes." Obviously, Judge Bechtle was addressing judge-shopping or manipulation by prosecutors, as only prosecutors initiate criminal proceedings.

It is thus apparent that the absence of a related-case rule in the Local Criminal Rules is to prevent ***prosecutorial*** manipulation of the assignment process (a concern that may implicate due-process interests). Nothing in this policy suggests any basis for limiting the powers of the Chief Judge to reassign a case in appropriate circumstances, particularly where the interests of justice and judicial economy warrant such a re-assignment. The Local Criminal Rules do not deprive the Chief Judge of the authority to make sensible, transparent Calendar Control decisions in the criminal context, including reassigning criminal cases where appropriate to preserve judicial resources and to secure litigants' interests in efficiency.

The Division goes to great lengths to try to refute the policy concerns underlying this Court's criminal assignment rules. To distinguish *United States v. Forbes*, 150 F. Supp. 2d 672 (D.N.J. 2001), the Division emphasizes that the criminal case there was treated as related "at the Government's request." Opp. at 5. Certainly, if a criminal case may receive related-case treatment "at the Government's request," it may receive such treatment upon the exercise of judicial discretion at the request of defendants.

As Defendants observed in their opening memorandum, this Court has faithfully applied Local Civil Rule 40.1 as incorporated in the Local Criminal Rules. Mem. at 9 (discussing *United States v. Weaver*, Cr. No. 04-320-01, 2004 WL 2399820 (E.D. Pa. Sept. 29, 2004)). The Division purports to distinguish *Weaver* on the grounds that it "did not involve assignment of a criminal case, but involved assignment of a second wiretap application." Opp. at 6. But wiretap applications are governed by the Local Criminal Rules, as *Weaver* and Local Criminal Rule 41.1

4

make clear.   Thus, it is apparent that this Court applies Local Civil Rule 40.1 when it is incorporated by reference in the Local Criminal Rules, as it is here.

## II.   The Division  Grossly Understates The Judicial Efficiencies Of Judge Savage Continuing To Hear This Amnesty Agreement Dispute

The Division attempts to minimize the potential efficiencies to be gained by Judge Savage's experience in the civil case, but that attempt cannot withstand analysis.   In fact, Defendants' motion to dismiss this criminal case is likely to be a substantial repetition of the permanent-injunction trial held before Judge Savage.

The January 15, 2003 Agreement states that Stolt-Nielsen and its executives will not be prosecuted for any act or offense occurring before the date of the letter.   The Division's indictment of Stolt-Nielsen (and two of its executives) rests upon the Division's claim that the company breached its obligations under the Agreement.   Notably, the Division does not contend — and has never contended — that Stolt-Nielsen or any of its executives committed any violation of the antitrust laws after entering into the Amnesty Agreement (or even after approaching the Division on November 22, 2002 about entering into an amnesty agreement). Instead, the Division's contention is that when Stolt-Nielsen was entering into the Amnesty Agreement, its attorney orally represented to the Division's attorney that Stolt-Nielsen had terminated its illegal conduct in early 2002, when in fact the company did not terminate the conduct until October or early November 2002, and that this constitutes a breach of the Agreement even though the Agreement provides that the company and its executives will not be prosecuted for conduct occurring before January 15, 2003.

Although Stolt-Nielsen disputes that its illegal conduct continued as late as October or

November 2002, Stolt-Nielsen's primary defense to this asserted breach is that such conduct would not breach the January 15, 2003 Amnesty Agreement, which expressly provided amnesty for any act or offense committed prior to that date, and, in any event, its attorney did not represent orally that the company's illegal conduct had terminated in early 2002.

Given the Division's contention and Stolt-Nielsen's primary defense, the civil injunction hearing understandably focused on the negotiations giving rise to the Amnesty Agreement, the proper construction of the Amnesty Agreement, and what Stolt-Nielsen's attorney said to the Division's attorneys in the period leading up to the signing of the Amnesty Agreement. *See* January 14, 2005 Memorandum, Order and Findings of Fact at 20, attached as Exhibit 1.

In the civil injunction hearing before Judge Savage, by agreement of the parties, the proceedings were bifurcated into two "phases." *See* Hrg. Tr. of April 13, 2004, at 5-6, attached as Exhibit 2. In Phase One, Judge Savage considered issues relating to the formation, interpretation and performance of the Amnesty Agreement to determine whether the alleged illegal conduct by Stolt-Nielsen between March 2002 and November 2002 would have invalidated the Agreement. *Id.* Pursuant to the parties' agreed bifurcation of the proceeding, if the court were to conclude that the alleged illegal conduct in that March–November period would have violated the Agreement, a Phase Two was to be held to determine whether such conduct in fact occurred. *Id.*

The Division understates the importance of the earlier proceedings by characterizing the prior proceedings as "an abbreviated hearing" that involved the testimony of "just two witnesses," "two lawyers" who were "involved in drafting and negotiating" the Amnesty Agreement. Opp. at 7. But these "two lawyers" were — and are — the crucial witnesses on the

key Phase One issues of the formation, interpretation and performance of the Agreement and whether there was any oral representation as to when Stolt-Nielsen terminated its illegal conduct. One is the Stolt-Nielsen lawyer who negotiated the Agreement with the Division, and the other is the Division's lawyer who negotiated the Agreement with Stolt-Nielsen.

Judge Savage not only heard and observed extensive testimony from these key witnesses, but he also heard extensive oral argument in the form of opening and closing arguments on the central disputed issues and the testimony.  Over the course of the hearing, the parties collectively submitted more than 70 exhibits.  Following the hearing, all of the parties submitted post-trial briefs on the legal issues and extensive proposed findings of fact and law. During the proceedings the parties submitted more than 50 separate filings totaling more than 2000 pages.  Importantly, at the conclusion of the Phase One hearing (and after the testimony of the two key witnesses), the Government affirmed to Judged Savage that it "had enough of an opportunity to say what [it] wanted to say and present whatever [it] wanted to present."  Hrg. Tr. of  April 14, 2004, at 106 (Exhibit 2).

Judge Savage considered these submissions in drafting his 30-page Memorandum, Order and Findings of Fact.  (Exhibit 1).  Judge Savage made comprehensive Findings of Fact that will be relevant to Defendants' motion to dismiss, including: the Division's many speeches and pronouncements enticing applicants into the Amnesty Program (*see* ¶¶ 4-6); Stolt-Nielsen's decision to approach the Division for amnesty (*see* ¶¶ 16-24); the actual negotiations regarding Stolt-Nielsen's admission into the Amnesty Program (*see* ¶¶ 25-31, 34-42); the departure of the former-SNTG general counsel and its role in the Amnesty negotiations (*see* ¶¶ 32-37); the remedial steps Stolt-Nielsen had taken to enhance its internal antitrust compliance program (*see*

¶ 37); the investigation conducted by Stolt-Nielsen's outside counsel (*see* ¶¶ 46-48); Stolt-Nielsen's proffer and its acceptance by the Division (*see* ¶¶ 49-53, 80); the terms of the Amnesty Agreement and their meaning (*see* ¶¶ 54-69, 82); Stolt-Nielsen's cooperation and absence of a request by the Division to interview Wingfield (*see* ¶¶ 70-72); the successful criminal prosecutions of co-conspirators and their executives based on the evidence Stolt-Nielsen disclosed to the Division (*see* ¶¶ 73-79); and the Division's steps to remove the Defendants from the Amnesty Program (*see* ¶¶ 83-89).  As a result of the Phase One hearing,  Judge Savage gained an extensive knowledge of the legal and factual issues that will dominate the Defendants' motion to dismiss.

In an apparent attempt to portray this criminal case as different from the just-concluded civil suits, the Division asserts that its purported revocation of the Amnesty Agreement came "nearly a year after the civil suits were filed."  Opp. at 2 n.1.  This assertion is simply incorrect. It is a matter of indisputable record fact that the Division purported to revoke the Amnesty Agreement, in writing, on March 4, 2004, less than a month after the February 2004 civil suits were filed.  Thus, the civil suits focused entirely upon whether that revocation was lawful, the same issue that will be the focus of the Defendants' motion to dismiss this criminal case.

Finally, the Division also contends that a hearing on the motion to dismiss the indictment would be different because the Government would not be constrained from presenting grand jury evidence to support their case.  But as the Division itself admits (at 3), Judge Savage found that the grand jury material the Division submitted *ex parte* is not relevant on the Phase One issues. This finding was indisputably sound, given Judge Savage's finding that any continuation of the illegal conduct until October or November 2002 was legally irrelevant in light of the fact that the

Agreement provides amnesty through January 15, 2003.

As its initial response to the indictment (and consistent with the Third Circuit's decision), Stolt-Nielsen intends to move to dismiss the indictment on precisely the same grounds that Judge Savage based his permanent injunction.  The two lawyer witnesses will be the key witness again (either live or through their civil-action transcripts).    If the court reaches the same evidentiary and legal conclusions, there will again be no need for Phase Two evidence (including grand jury material), and the indictment would have to be dismissed.  In any event, there can be no doubt that the Phase I one issues will be litigated and that Judge Savage is familiar with those issues.

## CONCLUSION

For these reasons and those set forth in Defendants' initial memorandum, the Court should grant Defendants' motion and refer this case to the Chief Judge for reassignment to the docket of the Honorable Timothy J. Savage.

Dated:  September 17, 2006                             Respectfully submitted,


   /s/ Matthew D. Lee                                      /s/ Allen D. Black
William H. Roberts                              Allen D. Black
Ian M. Comisky                                  Roberta D. Liebenberg
Matthew D. Lee (ML1370)                         Gerard A. Dever
Blank Rome LLP                                  Fine, Kaplan and Black, RPC
One Logan Square                                1835 Market Street,
Philadelphia,  PA 19103                          28th Floor
Tel.: (215) 569-5500                            Philadelphia, PA  19103
Fax:  (215) 569-5555                            Tel.:  (215) 567-6565
                                                Fax:  (215) 568-5872

*Of Counsel*
**WHITE & CASE** LLP                            Thomas A. Bergstrom
Christopher M. Curran                           138 Davis Road
J. Mark Gidley                                  Malvern, PA  19355
George L. Paul                                  Tel.: (610) 251-9260
Peter J. Carney                                 Fax: (610) 251-9630
Lucius B. Lau

701 13th Street, N.W.
Washington, D.C.  20005S
Tel.: (202) 626-3600
Fax:  (202) 639-9355

*Attorneys for Stolt-Nielsen S.A.,*
*Stolt-Nielsen Transportation Group Ltd.*
*(Liberia), and  Stolt-Nielsen Transportation*
*Group Ltd. (Bermuda)*

*Attorneys for Richard B.*
*Wingfield*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September 2006, I caused to be served "DEFENDANTS' REPLY IN SUPPORT OF MOTION TO REFER CASE TO CHIEF JUDGE FOR THE PURPOSE OF REASSIGNMENT" upon the following parties by first-class mail and facsimile transmission:

Antonia R. Hill, Esq.
Attorney, Philadelphia Office
Antitrust Division
U.S. Department of Justice
The Curtis Center, Suite 650W
170 S. Independence Mall West
Philadelphia, PA  19106

*Counsel for the United States of America*

Jonathan S. Sack, Esq.
Morvillo, Abramowitz,
Grand, Iason, Anello &
Bohrer, P.C.
565 Fifth Avenue
New York, NY  10017

*Counsel for Samuel A. Cooperman*


    /s/ Matthew D. Lee    
Matthew D. Lee (ML1370)